SAMUEL K. SCHWENK et al., Appellants, *v.* ROBERT NAYLOR, Respondent.

A false and fraudulent representation, made with intent to deceive, as to material facts which necessarily affect the value of shares of stock in a corporation, constitutes a cause of action against the person making it, where by means thereof he has induced another to purchase such shares.

It is not essential to the right of action that the money advanced on the faith of the representation was paid to the party making it, for his individual benefit; his liability is the same, although the money was advanced for the benefit of the corporation.

By false and fraudulent representations on the part of defendant as to the title of a corporation to certain real estate which defendant had conveyed

to the corporation by warranty deed, plaintiff was induced to purchase a portion of the stock of the corporation. Defendant had in fact no title *to a portion of the premises; he subsequently acquired title but conveyed it to a third person.* In an action to recover damages for the fraud, the court nonsuited the plaintiff upon the ground among others that by the warranty in the deed the corporation, when defendant acquired title, became, by estoppel, the owner of the equitable title to the land in dispute, and that as the corporation was in possession there could be no *bona fide* purchaser from defendant. The evidence as to possession by the company was indefinite. *Held,* that such a ground for the nonsuit was untenable; that a disputed and doubtful equitable title was not the equivalent of the clear and undisputed legal title plaintiffs had the right to require, and that it was error to hold that no damages could be sustained by the substitution of the one for the other by means of a fraud.

(Submitted February 1, 1886; decided June 1, 1886.)

THIS action was brought to recover damages for alleged fraudulent representations by means whereof plaintiffs were induced to purchase from defendant two-thirds of a mill property in Florida, or of the capital stock of a corporation, to which said property had been conveyed by the defendant who was the owner of all of the capital stock.

The alleged false representations were to the effect that the corporation had title to about thirty-three acres of land in Florida, having thereon a large and valuable saw-mill with a frontage of over two thousand feet on Turtle harbor, with large and commodious wharves, that it was the owner of a dock extending in length two hundred and fifty feet, and a tramway leading from the mill to the dock, and the land upon which said tramway and dock were situated, which dock and tramway were necessary for the successful operation of the mill. The consideration of the transfer was $15,000, which it was agreed was to be used by defendant in operating the mill. The complaint alleged, and the testimony showed that the lands of the corporation only included a small portion of the dock and tramway, and did not include all of the land which defendant represented and pointed out as belonging to it. At the close of plaintiffs' evidence, the court on defendant's motion dismissed the complaint.

The following is an extract from the opinion :

" The judge presiding at the trial granted the motion, assigning as reasons that the representations were not made concerning the stock, but concerning the length of the water front and the size of the dock; that upon these representations the plaintiffs parted with their money, not to the defendant for his individual benefit, but to him to be used in the improvement of the company's property, and the money was so used; that it was not proved that all the representations were untrue, and therefore the only remedy the plaintiffs had was to rescind and recover back their money on a tender back of the stock; that they could not sue in affirmance of the contract and for partial damages, because it was necessary in such a case, as in the case of a warranty, that the false or fraudulent representations should have been made concerning the article for the inferiority of which the recovery is sought; that the sale in this case was of the stock, and as the representations were not made concerning the stock, there was no cause of action for false and fraudulent representations; that as to the length of the dock the plaintiffs could see for themselves before they parted with any money and need not have been misled, and as to the deficiency in the water front the evidence was insufficient to establish the fraudulent character of the representations at the time they were made, as the parties might well have been mistaken as to the boundaries.

" We think that although the interests purchased by the plaintiffs were conveyed to them by means of a transfer of the stock, the contract was in substance for a sale of two-thirds interest in the property, the defendant representing himself as holding the entire interest, in the form of stock.  The contract of sale states in terms that the defendant agrees to sell and the plaintiffs agree to purchase one undivided third interest each, in ' all that mill and machinery therein, unfinished tug, real estate and all other property at Apalachicola, Franklin county, Florida, belonging to said Naylor on the following terms.'  A list of the property was furnished and attached to the contract, and one of the conditions was that the property in the list should be found at the mill.  The contract recited that this property was represented by stock in the company which had been formed for the purpose of operating the mill, the sole

control of which was in the hands of Naylor, and that the stock of that company was to be equally divided between the three parties. That mode of transferring the interests sold did not, however, change the substance of the transaction, which was a sale of two-thirds interest in the property described.

"It is quite immaterial, however, whether the sale was of the property or of the stock. A false and fraudulent representation as to the property of a corporation, of material facts which necessarily affect the value of shares of stock therein, constitutes a cause of action against a party inducing another by means of such fraudulent misrepresentation to purchase such shares quite as sufficient as if the purchase had been of the property of the company with regard to which the representation was made. Nor is it material in either case that the purchase-price of the property, or the money advanced on the faith of the representation, be paid to the party making it, for his individual benefit. If known to be false and made with intent to deceive and defraud the person who is thereby induced to pay out his money, the person guilty of the fraud is liable to respond in damages, on the same principle on which one person is held liable in damages for fraudulently giving a false recommendation by which another is induced to give credit to a third party.

"In the present case, however, the money advanced by the plaintiffs was proved to have been paid to the defendant, and there is no evidence showing what disposition he made of it, but even if he did expend it in the improvement of the company's property, he reaped an individual benefit to the extent of at least one-third of it, as he was the owner of one-third of the stock of the company, and according to his own statements, the effect of the advance was expected to be to make his stock, which, without the improvements, was worthless, yield a large profit, and he had a strong personal interest in inducing the plaintiffs to make the advance.

"The next ground of nonsuit as to the dock cannot be sustained. The plaintiff Kilpatrick saw the dock, but it is not correct to say that he could not be misled. According to his testimony he was misled. What he saw was a long dock run-

ning southerly from the mill, with a tramway extending its en-
tire length.   To the extent of about two hundred and fifty
feet it was in good repair, but beyond that a part had been car-
ried away, leaving piles still standing, and beyond the two hun-
dred and fifty feet the defendant pointed out to him a water
front of about eight hundred feet which he represented to be-
long to the mill property and to be on the mill side of the city
line, while, according to the defendant's own admission to the
witness Storkey, only about fifty feet of this wharf and water
front belonged to the company and the rest was claimed by the
defendant to belong to him by virtue of a purchase made by
him subsequent to the sale to the plaintiffs, and for this prop-
erty he declared to the plaintiffs, in 1882, that he would com-
pel them to pay $50,000, and stated to them that he had con-
veyed it to another party to prevent them getting it.

" The representation on which the property was sold was well
calculated to mislead, as the two hundred and fifty feet of
wharf was still standing, and the residue of the water-front
pointed out was marked by physical objects, while, as testified
to by Kilpatrick, there was nothing on the land to indicate the
city line, and if he had examined the deed from the plaintiff
to the company, put in evidence, he could not have discovered
from its description any thing except that the property was
bounded on the south by the city line, of the location of which
he knew nothing except what was represented by the defend-
ant, the description in the deed being by section numbers.
Kilpatrick was only two days at Apalachicola, and could not
be presumed to know the location of the city line.   He sug-
gested to the defendant, at that time, that he would like to em-
ploy a lawyer to examine the records, but the defendant said
that he had all the papers straight, and it was all right and he
had a perfect title ; that he had paid his money and knew what
the property was.   Under these circumstances we are of opin-
ion that the plaintiff had the right to rely upon the representa-
tion of the defendant as to the extent and boundary of the
property.   All that by the terms of the contract he had un-
dertaken to do was to see that the property was there as repre-
sented.   He saw it before him, but was not bound then and
there to examine the title, especially when the defendant pro-

fessed to know all about it and the extent of the property. ( *Whitney* v. *Allaire,* 4 Denio, 554, 555; *Allaire* v. *Whitney,* 1 Hill, 485; *Beardsley* v. *Duntley,* 69 N. Y. 577.)

" The last ground of nonsuit·was that as to the deficiency in the water front the evidence was insufficient to establish the fraudulent character of the representations at the time they were made; that the difficulty arose from the boundary line, and as to that the parties might well be mistaken.

" We think that, under the evidence, this was eminently a question for the jury. The evidence of the statement of the defendant (which the jury might infer was made for the purpose of deterring Kilpatrick from employing a lawyer), that he had the papers all straight and had a perfect title and had paid his money˚and knew what the property was, was pertinent to this point, and, coupled with the facts that when in September, 1881, the property deficient was put up for sale in Florida under the decree of the Probate Court, he knew enough to buy it, and his admission, testified to by Edward W. Kilpatrick, that he knew that there was a portion of the land which he represented to the plaintiffs as belonging to the property that did not belong to it, without any qualification as to the time when he had such knowledge, his taking the trouble to consult a lawyer when he bought the deficient property as to whether he could hold it against the company, and his resorting to the plan of conveying it away to prevent the company getting it, and his threat to compel the plaintiffs to pay $50,000 for it. These circumstances, unexplained as they are in the case as now presented to us, tend to show bad faith on the part of the defendant, and to make out a strong chain of evidence for submission to the jury on the questions of guilty knowledge and fraudulent intent.

"At General Term a new and different ground, not assumed by the judge at the trial, was taken for affirming his conclusion. The principal point, not already answered, was that the plaintiffs had not shown any damage from the false representations; that there was no proof, and the description in the deed from Naylor to the company, unexplained, did not show, that the land in dispute was not contained in the deed; that the company was in possession of the land in dispute (which fact

was not clearly shown) ; that there was no substantial testimony; that the company did not own the two thousand feet of water front and the wharf, as represented, except the fact of the subsequent purchase by Naylor.

" These points are sufficiently answered by the testimony of Storking and the admissions of Naylor, but the main ground taken by the court is, that by the implied warranty in the agreement of purchase of November 11, 1880, and the express warranty in the deed from Naylor to the company, the company became, by estoppel, the owner of the equitable title to the land in dispute, and that the consideration of the last conveyance to Naylor having been paid with the money of the company, or of the plaintiffs (a fact of which there was no proof) made him the trustee for the one whose money was paid ; that although he had admitted that he had conveyed away the property, there could be no *bona fide* purchaser from him, because the possession of the company was notice of its rights, and the purchaser would take subject to that notice.

" This seems to us a rather strained argument by which to sustain what, upon the case as presented, in the absence of any explanation, the jury might have pronounced a gross fraud.

In the first place, the evidence as to possession by the company of the disputed premises is very indefinite. It does not show what, if any, business was carried on at the mill, or to what extent the company was in possession of or occupied the water front. But whatever possession there was, was through Naylor, who did not leave the property till December, 1881, which was after his purchase of the water front. Up to that time he was the apparent possessor of the property, and there is nothing to show that the rights of the company, or that he was its representative, were generally or at all known in Apalachicola. The company was a private corporation organized in New York, and it is, to say the least, very doubtful whether, under the circumstances, the possession of Naylor would be notice to the world of any rights but his own, and whether there could not have been a *bona fide* purchaser from him. To hold that a disputed and doubtful equitable title, such as is suggested in the opinion of the General Term, is equivalent to a clear and undisputed legal title, and that no damage

could be sustained by the substitution of the one for the other by means of a fraud, is going further than we are inclined to follow."

*A. R. Dyett* and *Joseph Fettretch* for appellants.

*Wm. B. Putney* for respondents.

RAPALLO, J., reads for reversal and new trial.
All concur.
Judgment reversed.