EVATT v. HUDSON.

Opinion delivered January 16, 1911.

1. FRAUD—RESCISSION OF CONTRACT.—One who has been fraudulently induced to purchase or sell property or to exchange his own property for that of another may in equity have such contract annulled and the consideration restored. (Page 268.)

2.  SAME—WHEN REPRESENTATIONS ARE FRAUDULENT.—Representations to be fraudulent must be material to the contract or transaction to be avoided, and must be made by one who knows them to be false or else, not knowing, asserts them to be true, and made with the intent to have the other party act upon them to his injury, and such must be their effect.   (Page 268.)

3.  SAME—RIGHT TO RELY UPON REPRESENTATIONS.—Though equity will not relieve a party from the consequences of his own carelessness, yet when a false representation is made of a fact peculiarly within the knowledge of the person making it, the one to whom it is made may rely upon its truthfulness, though the means of ascertaining its falsity were open to him.   (Page 268.)

4.  SAME—SALE OF BANK STOCK.—A false and fraudulent representation made with intent to deceive as to material facts which necessarily affect the value of shares of stock in a corporation will avoid a sale thereof when by means thereof another was induced to purchase such shares.   (Page 269.)

5.  SAME—EFFECT OF REFERRING PURCHASER TO ANOTHER.—Where one person is sent to another for information, the statements and representations made by him relative to the business concerning which the information is sought are binding upon the party sending him. (Page 271.)

Appeal from Scott Chancery Court; *J. V. Bourland,* Chancellor; affirmed.

*A. G. Leming* and *Youmans & Youmans,* for appellant.

In order to sustain a recovery for appellee, it must appear that the statements made by appellant were false, and that he knew them to be false, or else, not knowing, he asserted them to be true with intent to have appellee to act upon them, and that he did so, to his injury.   73 Ark. 542; 11 Ark. 58; 38 Ark. 339; 60 Ark. 387.

Where the purchaser undertakes to make investigations of his own, and the vendor does nothing to prevent his investigation from being as full as he chooses to make it, the purchaser cannot afterwards allege that the vendor made misrepresentations. 125 U. S. 247; 46 Ark. 250.

*Cammack & White,* and *Carmichael, Brooks &·Powers,* for appellee.

1.  Any false statement by an authorized agent of a corporation in regard to the past or present status of the corporate enterprise or matters connected therewith, whereby subscriptions are obtained, is a fraudulent representation.   143 U. S. 79;

89 Ill. 395. A representation that the stock is worth more than par is material when in fact the corporation is insolvent. 70 S. W. 868; 72 S. W. 768; 82 N. E. 104. Statements need not be intentionally false in order to amount to fraudulent representation. 2 Disney (Ohio), 302; 51 Miss. 829; 2 Head (Tenn.) 23; 77 Ala. 357; Chitty on Contracts (12 ed.), 692.

Relief on the ground of misrepresentation will be granted where the fact is pleaded, and the proof is clear that the party relied on representations to his hurt. 164 Ill. 282; 109 N. W. 784; 6 Kan. App. 83; 79 Md. 530; 62 N. Y. 645; 26 Fed. 210; 103 Ky. 153; 93 S. W. 534. Where fraudulent misrepresentations are made by a third person with the knowledge and connivance of the vendor, the sale may be rescinded as though they were made by the vendor himself. 66 N. Y. 558; 52 Fed. 77.

As to the duty of the purchaser to investigate, see 38 Ark. 334; 143 U. S. 79.

In an action for deceit, the motive of the defendant is immaterial. The law infers an improper motive if what he says is false within his knowledge, and occasions damage to the plaintiff. 22 Ill. App. 457; 51 Ill. 299.

2. This court will not reverse the decree of the chancellor unless it is contrary to the clear preponderance of the evidence, nor for any error unless that error is prejudicial. 70 Ark. 507; 77 Ark. 31; Id. 305; Id. 216; 71 Ark. 605; 68 Ark. 314; Id. 134; 44 Ark. 216.

FRAUENTHAL, J. This was an action instituted by O. R. Hudson, the plaintiff below, to annul a contract of sale or exchange of property into which it was alleged that the plaintiff was induced to enter by reason of the fraud of the defendant. It was alleged that the defendant sold to the plaintiff 34 shares of the capital stock of a business corporation for which he paid in money and property the sum of $1,125; and that defendant induced him to purchase said shares of stock by falsely and fraudulently representing that the corporation was in a good and prosperous financial condition, when, as a matter of fact, he knew that it was insolvent and the shares of stock wholly worthless. The plaintiff sought a cancellation of the deed which he had executed to defendant for the property conveyed to him, and a recovery of the money which he had paid as the considera-

tion for said stock. The defendant denied that he had perpetrated any fraud in the sale of the stock, but claimed that the sale thereof was made honestly and in good faith by him.

The chancellor determined that the contract of sale was entered into by plaintiff by reason of the fraudulent acts and representation of defendant, and he made a detailed statement of his findings of such fraudulent acts and representations which induced plaintiff to make the contract. He annulled the contract and entered a decree in favor of plaintiff cancelling the deed and adjudging a recovery of the money which had been given for the stock.

It is well settled that one who has been fraudulently induced to purchase or to sell property or to exchange his own property for that of another may have such contract annulled by a court of chancery and the consideration parted with by him restored. The question as to what constitutes fraud sufficient to entitle one to such relief in any given case is one both of law and fact, though generally a question largely of fact. It has been found difficult to give a precise and technical definition of fraud which would be applicable to the facts of all cases, because in its very nature fraud endeavors to elude all laws in fact while appearing to comply with all laws in form. So that the facts of each case must necessarily determine whether or not the falsehood and artifice complained of are of such a nature as to constitute a fraud cognizable in law. Representations to be fraudulent in law must be material to the contract or transaction which is to be avoided, and "must be made by one who either knows them to be false or else, not knowing, asserts them to be true, and made with the intent to have the other party act upon them to his injury, and such must be their effect." *Louisiana Molasses Co., Ltd.,* v. *Ft. Smith Wholesale Gro. Co.,* 73 Ark. 542.

But every false statement is not necessarily fraudulent in law, even though it is of a material fact inducing the contract. It must appear also that the party complaining not only did rely upon the fraudulent statement, but that he had a right to rely upon it in the full belief of its truth, otherwise his injury was due to his own carelessness and folly, and he cannot expect the law to act as his guardian and relieve him from the conse-

quences of his own want of prudence. Ordinary prudence and diligence require that each party shall seek "the means of information that are open to both alike." But, as is said in the case of *Gammill* v. *Johnson,* 47 Ark. 335, "when the representation is made of a fact that has nothing to do with opinion, and is peculiarly within the knowledge of the person making it, the one receiving it has the absolute right to rely upon its truthfulness, though the means of ascertaining its falsity were fully open to him. It does not lie in the mouth of the declarant to say it was folly in the other to believe him."

And, as is said in *Graham* v. *Thompson,* 55 Ark. 296, "the very representations relied upon may have caused the party to desist from inquiry and neglect his means of information, and it does not rest with him who made them to say their falsity might have been ascertained and it was wrong to credit them." Though the party may have the opportunity to ascertain the truth or falsity of the representations made, yet, if false representations are made with the intent to induce the other party to act thereon, ordinary prudence does not require the party to test the truth of such representations where they are within the knowledge of the person making them or where they are made to induce the other to refrain from seeking the means of information, *Stewart* v. *Fleming,* 96 Ark. 371; *Kountze* v. *Kennedy,* 147 N. Y. 147; *McKown* v. *Ferguson,* 47 Iowa, 636.

These principles of a law apply alike to the sales of shares of stock as to other property. A false and fraudulent representation made with intent to deceive as to material facts which necessarily affect the value of shares of stock in a corporation will avoid a sale thereof when by means of such fraudulent representations another was induced to purchase said shares. *Miller* v. *Burton,* 66 N. Y. 558; *Schwenk* v. *Naylor,* 102 N. Y. 683; *McAleer* v. *Horsey,* 35 Md. 439.

The above principles of law are applicable, we think, to the facts of this case and determine the rights of the parties herein. It appears that the defendant was the owner of 34 shares of the capital stock of the Farmers' Trading Company of the par value of $25 each. The Farmers' Trading Company was a mercantile corporation organized under the laws of the State of Oklahoma and doing business at the town of Broken Arrow in that State.

The plaintiff resided at a distance from said town, and had never been there, and was wholly ignorant of the financial condition of said corporation or the extent of its business; and the defendant was well aware of this. The defendant had owned the above shares of stock for three or four years prior to July 15, 1909, when he sold same to plaintiff. During all this time, and up to the time of the sale of said shares, one W. C. Adkison, a brother-in-law of defendant, was a salesman and stockkeeper of said corporation and actively engaged in carrying on its business. The defendant resided at Waldron, Ark., and he and his brother-in-law corresponded frequently relative to the affairs and condition of said corporation. It would appear that the negotiations leading up to the sale of the shares were begun by defendant, who in May, 1909, wrote to plaintiff asking him if he would trade his residence property in Waldron for stock in a corporation in Oklahoma. Thereafter the parties met, and defendant told the plaintiff that the corporation had made 34 per cent. the first year, and that he knew that the shares were worth more than $1.10. The plaintiff suggested that defendant go with him to Broken Arrow, and that he would like to see the condition of the country at that place. The defendant told him that if he could not go he would give him a letter of introduction to his brother-in-law, the said Adkison, and that he could rely implicitly upon what Adkison told him about the business and condition of the corporation, and assured him that his brother-in-law was honest and trustworthy. Shortly thereafter plaintiff went to Broken Arrow, taking with him a letter of introduction from defendant to Adkison, in which defendant requested his brother-in-law to give plaintiff all information he desired. The plaintiff presented this letter to Adkison at the corporation's store, and after reading same Adkison showed to plaintiff the goods and the store house which he claimed the corporation owned, and, without giving him any further details of the affairs thereof, almost immediately suggested that he would take plaintiff out in a buggy to show him the country. This he did, and remained with him in the country the entire day. Early the next morning the plaintiff returned from Broken Arrow without seeing or talking to any other person relative to the affairs of the corporation. During the time he was with Adki-

son he told plaintiff that he owned a large number of the shares' of the stock of the corporation, and that the shares were worth more than defendant offered to take therefor, and that he would not take $1.10 for his shares of stock; that the corporation was in good condition, and the business a paying proposition. Plaintiff also received a letter from said Adkison, stating that it would take 100 cents on the dollar to buy his stock, and that everything at that place was in a better condition than ever before. On July 15, 1909, plaintiff saw the defendant and purchased the shares of stock from him. At the time of the purchase defendant again assured him that he could rely on all that Adkison had told him relative to the business and affairs of the corporation. On August 6, 1909, the corporation failed and made an assignment. A few days later bankruptcy proceedings were instituted against it, and it paid about 34 cents on the dollar of its indebtedness, the shares thereby proving wholly worthless.

The above were in effect the findings of the chancellor as to the facts of this case, and we think these findings are fully warranted by the evidence. He also found that both the defendant and Adkison were familiar with the condition of the affairs of this corporation and of its impending insolvency, and that they were in concert in inducing plaintiff to purchase the stock; and we cannot say that these latter findings are not rightly inferable from the facts and circumstances adduced in evidence nor that they are clearly against the preponderance of the evidence.

It is urged by defendant that he did not know the true condition of the corporation and believed that it was perfectly solvent when he sold the shares. But, even if this be true, he must be charged with the representations and statements made by Adkison the same as if they were made by himself. He referred the plaintiff to Adkison to obtain this very information, and he and this contract of sale must necessarily be affected thereby. When one person is sent to another for information, the statements and representations made by him relative to the business concerning which the information is sought are binding upon the party sending him. 16 Cyc. 1018; *Murphy* v. *Killinger,* 8 Wall. 480.

The chancellor was amply warranted in finding that Adki-

son knew that the corporation was insolvent, and that its shares were worthless, and that he falsely represented to plaintiff that the corporation was in good financial condition, and that the shares were worth above par, with the fraudulent purpose of inducing plaintiff to purchase the shares from defendant.

Upon an examination of all the evidence we are of opinion that the findings of the chancellor are supported by the weight of the testimony, and that the decree entered by him is correct.

The decree is affirmed.