CASHION v. PARR.

Opinion delivered May 28, 1928.

W. W. Grubbs, for appellant.
William West and Streett & Burnside, for appellee.

McHANEY, J.  Appellant, E. T. Cashion, is the administrator of the estate of J. M. Basket, deceased, who died testate in Chicot County, Arkansas, on November 30, 1926, and the other appellants, Susie Martin and Clementine Webb, are the sole legatees under Basket's will. Appellees are husband and wife.

In the year 1905, Dr. Parr, then a young physician, located in Eudora for the practice of his profession, and roomed and boarded with said Basket and his wife until the death of Mrs. Basket, in 1906.  They continued to live together in Basket's home, sharing the expenses equally, until Dr. Parr's marriage.  After Dr. and Mrs. Parr were married, they bought Basket's home, and paid for it by boarding and rooming Basket at $200 per year for six and one-half years.  He thereafter continued to board with the Parrs, paying a flat monthly sum for room and board, until 1919, when he left, and went to live with appellant, Mrs. Susie Martin, in Lake Providence, Louisiana, selling out his blacksmith shop in Eudora, at which he had been engaged for many years.  His purpose in going to Lake Providence to live with Mrs. Martin was to make that place his home, but in April, 1924, Mrs. Martin removed from Lake Providence, La., to West Virginia, and Mr. Basket came back to Eudora, and again made his home with the Parrs from then until his death. For a short time after his return to Eudora he paid the appellees $25 per month for his room and board, and, on complaint being made, he thereafter, until his death, paid them at the rate of $30 per month, which was accepted without objection, and no demand was ever made for any additional sum until after Basket's death. In December, 1925, Mrs. Parr bought some real estate in Eudora on monthly payments of $80 per month, and, at her suggestion, Mr. Basket acquired these purchase money notes and carried them as a loan for the appellees.  These notes were paid off each month by the appellees to Basket until his death.  Appellee, Dr. Parr, had been Basket's physician during all these years, except during the period of his absence in Lake Providence, La.,

and had received pay for services rendered up to the year 1914. He had never presented any bill to Mr. Basket, or received any pay subsequent to 1914. After Basket's death, Dr. Parr filed a claim against the estate for medical services for the period of time running from January 1, 1914, until his death, except the years he was living in Louisiana, amounting to $710. Included in the claim was $406.25 for room rent for two years 8½ months at $12.50 per month, being the period of time he had lived in the Parr home subsequent to his return from Louisiana. Other items were included in the bill for nurse hire, about which there was no dispute. The administrator disallowed the claims, but the probate court allowed them in the sum of $949.41. The appellee, Mrs. Parr, filed a claim against the estate for nursing and special care from April 1, 1924, to the date of his death, in the sum of $250, which was disallowed by the administrator, and allowed in full by the probate court. The legatees under the will and the administrator appealed to the circuit court, where they filed answers, in both cases admitting that they owed Dr. Parr the $12 item for board, the item for nurse hire and for laundry, etc., and also a reasonable fee for his services during the deceased's last illness, but contested the claim for $225 for medical services from November 22 to November 30, 1926, covering Basket's last illness. On a trial before the court sitting as a jury, the court found, over appellant's objections and exceptions, that the claim for medical services rendered from April 1, 1924, to the testator's death, including the item of $225 for eight days' services during his last illness, should be allowed in the sum of $550. The court further found, as a matter of fact, that there was no given sum fixed for board for the years 1924, 1925 and 1926, and that the customary charge for board in Eudora was $40 per month, and allowed the additional sum of $10 per month, or a total of $325. The court also allowed the items about which there was no dispute, and also allowed the claim of appellee, Irene Parr, on special finding of fact, that she had rendered services during

the years mentioned in her claim of a special nature, and not contemplated by the parties in their contract for board. Appellants excepted to these allowances, and have brought the case here for review.

We think the court was in error in allowing all these claims, except for the services rendered by Dr. Parr during the last illness of the deceased, and this allowance of $225, we think, is excessive, and except part of the claim of Mrs. Parr. As to the allowance of the additional amount for room rent, the proof shows conclusively that he paid $30 per month each and every month up until the 18th of November, 1926, and that at his death he owed for twelve days' board, which the court properly allowed at the rate of $1 per day. There was no contract to pay any additional sum. He had, for many years prior to his going to Louisiana in 1919, boarded with the Parrs and paid a flat sum monthly for room and board. He had never paid a specified amount for room rent and another specified amount for board. Both were included in a flat monthly sum, and paid by him monthly. When therefore they continued to accept a specified sum monthly after his return from Louisiana, without a special contract agreeing to pay more, they would have no just claim against his estate after his death for an additional sum, the presumption of law being that the stipulated payments monthly were in full satisfaction of all claims on this account, unless the claimant is able to show that the decedent agreed to pay an additional sum.

In 24 C. J., p. 280, it is said: "Where services have been fully paid for in the lifetime of decedent, there cannot, of course, be any further recovery on that account against the estate, and, where the claimant has received a stated sum periodically for wages or salary, in payment of board or otherwise, the presumption is against a larger allowance, unless decedent is shown to have agreed accordingly."

The cases cited under the above text are all from other States, but they support the rule announced. There is no evidence in the record to indicate that, up to the

time of Mr. Basket's death, either of the appellees ever suggested to him that the $30 per month paid was insufficient, or that they were expecting more, and the record is totally lacking in any evidence to show that Mr. Basket agreed or expected to pay more. The same thing is true with reference to the items in Dr. Parr's account for medical services. As heretofore stated, he filed a claim covering all the years from 1914, except the period of time he was in Louisiana. During all this time he rendered no bill to Mr. Basket, made no claim for medical services, and at the time Mr. Basket went to Louisiana to live, when it was thought by all parties concerned that he would, in all probability, never return to Eudora, nothing was said about any indebtedness from him to appellees. And we think the court was in error in allowing all the items for medical services except during his last illness, and that the item of $225 allowed in this connection is excessive. The proof wholly fails to show what medical services were rendered; that the charge was reasonable for the services rendered. The proof shows that the only time he was in bed from any illness, after his return from Louisiana, was in August, prior to his death in November, 1926, and that, while he was not physically strong, he was up and out on the streets every day. He went to the blacksmith shop, and did some collecting for the then owner, until he was stricken fatally in November. During all this time no bills were rendered, no amount claimed from Mr. Basket by Dr. Parr, but, on the contrary, the doctor was paying to Mr. Basket the monthly installment notes of $80 each, without claim of deduction for medical services, or otherwise. He says the reason he did not render a bill was that he wanted the old man to enjoy his money while he had it.

Neither do we think the item of $250 allowed Mrs. Parr can be sustained. She made this claim, and same was allowed to her, on the theory that she had rendered special services in connection with his diet, by preparing special food, such as soft-boiled eggs and light diet. She says that the special diet consisted of ''soft-boiled

eggs that he could eat, and cereals and stuff like that, and then I had to prepare them three or four times a day, sometimes five times a day that he was fed.'' She doesn't say over what period of time she prepared these special diets, but presumably it was for the short time he was sick in August, and the eight days during his last illness. It is said that she assisted in nursing him during his last illness, and caused an injury to her kidney by helping him on the bed. The proof shows, however, that the doctor employed for Mr. Basket, during his last illness, one trained nurse and two colored nurses, incurring a total expense for nurse hire of $75.66. We do not think therefore that there is any evidence in the record to support a finding of the court in allowing this claim of $250 for special services rendered, with the exception of the eight days during his last illness, and this amount would be clearly excessive for this service. He had paid his board regularly, and no demand for additional compensation had been made upon him for special services prior to his last illness, and there had been no promise or agreement on his part to pay an additional amount for special services. However, there is some evidence in the record to support her claim for special services rendered during his last illness, but not sufficient to support the amount thereof.

For the errors indicated the judgment will be reversed, and the cause remanded, with directions to determine the value of Dr. Parr's services for medical attention during his last illness, and the value of Mrs. Parr's special services rendered during his last illness, and to allow their claims for such amounts as may be just and proper as shown by the evidence introduced thereon.