Duty *v.* Keith.

4-4024

Opinion delivered November 4, 1935.

576

*Duty & Duty*, for appellant.

*Earl Blansett* and *J. W. Nance*, for appellees.

MEHAFFY, J. In the year 1932, C. H. Clouston owned and operated a farm in Benton County, Arkansas. Mr. Clouston was a widower and lived alone. Some time in the early spring of 1932 he entered into correspondence with the appellees, and about May 7, 1932, employed them by express contract, which provided that appellees were to cook for him and perform other household duties, and nurse and care for him when he was ill. Appellees expressly agreed to perform the services mentioned and were to receive, as pay for their services, their board, rooms, a car, including upkeep on the car, gasoline and oil, and $6 a week in cash. Later the cash item was voluntarily doubled, and they received $12 a week instead of $6, in addition to the other items mentioned.

Mr. Clouston died on January 31, 1933. Appellees had been paid under the original agreement, had been furnished with a residence, their board, a car with gasoline and oil, and had been paid $6 a week for a while, when the weekly payment was raised to $12. The appellees do not deny this.

In January, 1934, the appellees filed their claims in the probate court, Ed Keith making a claim for $508 for nursing, giving medicine, and caring for Clouston at $4 a day from May 7, 1932, to January 31, 1933, the day Clouston died, except the time Clouston was in the hospital. Mrs. Keith filed a claim for $381 which was $3 a day for nursing, giving medicine and caring for Mr.

Clouston from May 7, 1932, to January 31, 1933, except the days Clouston was in the hospital.

There was a judgment of the probate court for Emma Keith in the sum of $122, and judgment for Ed Keith for $244. Appeals were prosecuted to the circuit court and a judgment entered there for Ed Keith and Mrs. Keith in the sum of $450, and the case is here on appeal.

Appellees do not deny that there was a contract by which they cared for Mr. Clouston and were paid from May 7, 1932, to January 31, 1933, the amount agreed upon, occupied the residence, were furnished a car with the upkeep, including gas and oil. They however seek to recover an additional sum for nursing and caring for Mr. Clouston during the entire time from May 7, 1932, up to the time he died, except the days he was in the hospital. There was no evidence of any additional contract and no competent evidence that they had not been paid.

Section 2 of the schedule to the Constitution and § 4144 of Crawford & Moses' Digest prohibit parties from testifying where the action is by or against executors, administrators or guardians, as to any transactions with or statements of the testator or intestate. They could no more testify that they had not been paid than they could that they had been.

There is no dispute about appellees caring for Mr. Clouston from May 7, 1932, to January 31, 1933, but they were required to do this under their original contract.

There is some testimony of other witnesses that the appellees performed the services, and as to the value of the services. This, however, is not disputed. No one testifies that appellees were employed other than by the original contract. The physician who testified was asked if he employed them, and he testified positively that he did not. It is not denied that they were paid the full amount under the original contract. No claim was ever made by the parties for an additional sum until long after Mr. Clouston's death.

In the case of *Cashion* v. *Parr*, 177 Ark. 458, 6 S. W. (2d) 544, where parties had been paid monthly during the lifetime of deceased, the court said: "As to the allowance of the additional amount for room rent the proof

shows conclusively that he paid $30 per month each and every month up until the 18th of November, 1926, and that at his death he owed for 12 days' board, which the court properly allowed at the rate of $1 a day. There was no contract to pay any additional sum. He had never paid a specified amount for room rent and another specified amount for board. Both were included in a flat monthly sum and paid by him monthly. When therefore they continued to accept a specified sum monthly after his return from Louisiana, without a special contract agreeing to pay more, they would have no just claim against his estate after his death for an additional sum, the presumption of law being that the stipulated payments monthly were in full satisfaction of all claims on this account, unless the claimant is able to show that the decedent agreed to pay an additional sum."

In 24 C. J. 280, it is said: "Where services have been fully paid for in the lifetime of decedent, there cannot, of course, be any further recovery on that account against the estate, and where the claimant has received a stated sum periodically for wages or salary in payment of board or otherwise, the presumption is against a larger allowance unless decedent is shown to have agreed accordingly."

The construction placed upon a contract by the parties is entitled to great weight and will generally be adopted by the court in giving effect to its provisions. *Coca-Cola Bottling Co. of Arkansas* v. *Coca-Cola Bottling Co.,* 183 Ark. 288, 35 S. W. (2d) 579; *Craig* v. *Golden Rule Ins. Co.,* 184 Ark. 48, 41 S. W. (2d) 769.

In the instant case both Mr. Clouston and appellees acted on the original contract. The appellees occupied the residence belonging to Mr. Clouston, received their board, had the use of the car, and Mr. Clouston, the evidence shows, performed his part of the contract. There is no evidence that another contract was made, either express or implied, and there is no contention that the original contract was not made.

To abrogate or modify a prior contract, it is necessary that the minds of the parties meet by an offer and acceptance of the new term. Conduct which is not nec-

essarily inconsistent with the continuation of a contract, will not be regarded as showing an implied agreement to discharge it, although such conduct might have been consistent with an agreement to discharge such prior contract. Page on Contracts, vol. 4, § 2458.

The conduct of the parties in the instant case is inconsistent with the making of a new or implied contract. They performed the original contract, received pay without objection, and there is no evidence that any additional contract was ever made.

The judgment in favor of the appellees is reversed, and the cause dismissed.