JORDAN *v.* WINOOSKI SAVINGS BANK.

4-2969

Opinion delivered April 10, 1933.

*Claude M. Cruce* and *A. L. Rotenberry,* for appellant.

*S. Lasker Ehrman* and *John M. Lofton, Jr.,* for appellee.

MEHAFFY, J. The appellant filed complaint in the St. Francis Chancery Court alleging that the appellee, Winooski Savings Bank, was a nonresident, and owned certain lands which were described in the complaint; that on or about December 15, 1931, said bank, for a valuable and good consideration, executed and delivered to appellant a certain oil and gas lease upon the lands described, and that appellant is entitled to all of the benefits, rights, title and interest accruing under said oil and gas lease; that Grover T. Owens, agent of the bank, called appellant into his office and prevailed upon him to turn over said lease for the purpose of examination, and refused to return said contract to appellant; that said lease had not been recorded, and that, unless restrained, the appellees would destroy, or put beyond the control or possession of appellant, the lease contract; that the appellees now hold said contract, and that they should be required to deposit the same in the registry of the court, pending final disposition of the cause. Appellant stated further that he had expended and would expend the sum of $500 as attorney's fees and necessary court costs incident to the trial, and that the same was occasioned by the wilful and malicious acts of the appellee bank and its attorneys and agents.

Appellant filed as Exhibit A the lease contract, which was an ordinary oil and gas lease. The lease is quite lengthy, and it would serve no useful purpose to copy it here.

The appellees filed answer, admitting that the Winooski Savings Bank was the owner of the lands described, but denied that the bank executed and delivered to the appellant the oil and gas lease, and denied that Grover Owens called the appellant to his office and under pretext of examining said lease, prevailed upon plaintiff to turn over said lease, and denied the other material allegations in the complaint.

The answer alleged that appellant represented to the attorneys for the bank that he was associated with financial interests who proposed to make an immediate and thorough test for oil and gas, and they could not spend the money incident thereto unless they were assured that the acreage surrounding the said proposed well should be blocked up in its entirety; that, if he and his associates could secure a lease on the lands described, they would be justified in making an exhaustive test; that they had $10,000 available with which to begin drilling operations; that when appellant agreed that, if the bank would execute the lease, he and his associates would enter into an agreement whereby the said lease should be placed in escrow in the Bankers' Trust Company in Little Rock, Arkansas, pending commercial production of gas and oil, and with the further agreement that, if appellant and his associates should abandon drilling operations for a period in excess of 120 days, the escrow agent should deliver the lease to the lessor for destruction; that the bank refused to enter into the lease unless this agreement was made, and the lease placed in escrow; that appellant agreed with the bank that it should execute a lease on those terms, and that the lease should be held in escrow under the conditions set forth. Appellees further stated in their answer that, acting on the representation of appellant, it executed an oil and gas lease on the lands described, and mailed it to Owens & Ehrman; that an escrow agreement was prepared by Owens & Ehrman, and submitted to the appellant, who stated that he desired the approval thereof by his associates before executing the same; appellant stated that, unless he could secure the lease for exhibition to adjacent landowners, he would be unable to secure the acreage de-

sired; that appellant said, if they would permit him to have custody of said lease, he would exhibit the same to the adjacent landowners, secure their leases, and return the lease executed by the bank; that the lease was never delivered to plaintiff. They further stated in the answer that the appellant and his associates were not in position to make the test they claimed, and did not have $10,000 cash; that the appellant had not complied with the conditions and representations under which the lease contract was executed.

The case was heard by the court on the pleadings with their exhibits and oral testimony, and the court dismissed the complaint for want of equity, and adjudged costs against the appellant. The case is here on appeal.

The appellant testified that on April 12, 1932, Mr. Owens called him, stating he would like to have a conference with him the next day, and they met at Owens' office. The question arose as to the rental on the lease, and appellant told Owens that he had paid the rental to Mr. Bricker, and exhibited a receipt from Bricker; that Owens asked him to let him see the lease, and he handed it to him, and Owens refused to return it; that he paid Mr. Bricker $10 and Mr. Bricker gave him a receipt. He testified that he did not admit anything about an escrow agreement; that he made no admissions at all; that he took a copy of this lease and showed it to persons, inclosing the acreage contract. Appellant testified that nothing was said about an escrow agreement or any other conditions or agreements; that he did not have the lease recorded because Mr. Bricker asked him not to do so at that time, but the main reason he did not have it recorded was that other people would come in and see the lease on record and would make an effort to block the lease. He testified that he did not know that Mr. Bricker was not a member of the firm of Owens & Ehrman, and did not make any inquiry about the matter, but that Mr. Bricker said he represented the Winooski Savings Bank; that he did not know whether he represented the firm or the bank; that he was not present when the escrow agreement was dictated, and nothing was ever said to him about any escrow agreement. The lease was turned over

to him according to agreement; he told Mr. Bricker that other associates and himself had $10,000 to drill the well.

Bricker testified that the appellant came to him about the lease and that he told appellant that everything about the sale of real estate or interest therein would have to be referred to the bank; that the instructions from the bank were that we could not give a lease unless we knew that actual continuous activity toward commercial production of oil and gas could be had; the lease was to be placed in escrow; that he had this agreement with appellant. When the lease came from the bank, witness called appellant, who came to his office, and at that time witness asked him to execute the escrow agreement. Appellant said he wanted the lease to show adjoining landowners; witness told him at that time that the lease was supposed to be placed in escrow, and that he could not deliver it to him, but that appellant prevailed upon him to deliver it to appellant for the purpose of exhibition only; that appellant did not bring the lease back; the lease was never delivered to him, but was loaned to him; escrow agreement was never executed; appellant was to sign that when he brought the lease back; witness was present when Owens asked appellant for the custody of the lease, and appellant handed it to him; the escrow agreement was dictated the same day that witness handed appellant the lease; he said he would sign it when he brought the lease back.

Several letters were introduced, and the escrow agreement which was never signed by appellant.

Grover T. Owens testified that he talked with the appellant and that appellant explained to him that he had agreed with Bricker that there was to be executed an escrow agreement, and that the lease was to be delivered to the Bankers' Trust Company and held in escrow; that he refused to deliver the lease back to appellant.

Receipt for $10, covering rental on the lease, signed by Bricker, was introduced.

It is conceded that the testimony with reference to the delivery of the lease to the appellant is in conflict, but it is contended that the testimony introduced by appellees is incompetent, first, because the lease itself is

complete, and bears no conditions or provisions whatever relating to any other conditions or provisions outside of those expressed in the lease itself, and it was duly executed by the bank; second, that appellant has complied on his part with all the conditions of the lease, and holds documentary evidence signed by the agent of appellees.

The rule is well established that oral testimony cannot be admitted for the purpose of varying or contradicting the terms of a written contract, but, according to the appellees' testimony in this case, this lease was not to be effective until the escrow agreement was signed, and the lease itself was to be deposited in escrow with the Bankers' Trust Company. If this testimony was true, then there was no contract made, because the escrow agreement was never signed, and the lease was not deposited.

The testimony of appellees was clearly admissible, not as contradicting a written contract, but to show that no contract was ever made. There was no evidence introduced or offered by appellee that in any way varied or contradicted the terms of the written contract. The effect of their testimony is that the lease was to be deposited in escrow, and that it never was delivered, but loaned to appellant for the purpose of exhibiting it to others, and, as to whether a contract was made or not was a question of fact to be determined by the chancellor. *New Home Sewing Machine Co.* v. *Westmoreland,* 183 Ark. 769, 38 S. W. (2d) 314. The rule that parol evidence is not allowed to contradict or vary a written instrument, is only applied where the parol evidence tends to vary or contradict the language used in the instrument. *Kerby* v. *Feild,* 183 Ark. 714, 38 S. W. (2d) 308.

The contention here on the part of the appellees, and the evidence introduced by them, is that the lease was never delivered, and not that any of the terms of the lease were other than stated in the lease. The evidence does not tend to vary or contradict the terms of the lease. It is contended, however, by the appellant, that he complied with the terms of the lease and paid Bricker $10 in compliance with the terms of the lease, and that Bricker gave him a receipt for the money. Bricker testi-

fied that he gave the appellant the receipt, but that appellant did not pay him the $10, that he never paid him anything.

The appellant introduced a copy of the lease which he relies on. One of the provisions of the lease reads as follows: ''If no well be commenced on said land on or before the 15th day of February, 1932, this lease shall terminate as to both parties, unless the lessee, on or before that date, shall pay. or tender to the lessor, or to the lessor's credit in the Bankers' Trust Company of Little Rock, Arkansas, or its successors, which shall continue as the depository regardless of changes in the ownership of said land, the sum of ten ($10) dollars, which shall operate as a rental and cover the privilege of deferring the commencement of a well, for twelve months from said date.''

There is no evidence in the record tending to show that Bricker was authorized to receive the rental, but the contract relied on by appellant expressly states that it must either be paid to the lessor, or to the lessor's credit in the Bankers' Trust Company. Appellant does not claim that either was done. There is no evidence that Bricker was the agent of the bank to receive the money, or for any other purpose. The only testimony offered by the appellant as to Bricker's agency is that Bricker said he represented the bank.

It is well established that you can neither prove agency nor the extent of an agent's authority by his declarations or actions, and his written statements or admissions are as objectionable as his oral ones, and his letters, telegrams and other writings cannot be used as evidence of his agency. His actions and statements cannot be made use of against the principal until the fact of the agency has been shown by other evidence. *American Southern Trust Co.* v. *McKee,* 173 Ark. 147, 293 S. W. 50.

Whether the lease was delivered, and whether there was to be an escrow agreement deposited with the lease in the Bankers' Trust Company, and all other questions involved in this suit, are questions of fact. The chancellor found in favor of the appellees on the facts, and the

findings of the chancellor are not against the preponderance of the evidence.

The decree is therefore affirmed.