DODSON *v.* WADE.

4-4505

Opinion delivered February 1, 1937.

*Harrison, Smith & Taylor,* for appellant.

*Frank C. Douglas,* for appellee.

MEHAFFY, J. This action was instituted in the municipal court at Blytheville, Arkansas, for the recovery of a Chevrolet truck which the appellee, plaintiff below, alleged was unlawfully detained by the appellant. Appellant filed cross-bond and retained possession of the truck.

There was a trial in the municipal court and a judgment in favor of the appellant. An appeal was prosecuted to the circuit court. The trial in the circuit court resulted in a verdict and judgment for the appellee, and the case is here on appeal.

Prior to December 30, 1935, the appellant and Ewell Davis were engaged in the second-hand furniture business in Blytheville, Arkansas, and the appellee lived at Earle, Arkansas. Negotiations were begun for the purchase of the second-hand furniture business of appellant and Davis by the appellee. Appellee knew no one in Blytheville except Davis and appellant. When they had reached an agreement appellee said he wanted something to show what he was getting. Appellee did not know any lawyer in Blytheville and Davis and Dodson suggested they go to Mr. Reed's office and get him to write a bill of sale. After the bill of sale was written it was handed to Mr. Wade to read. The following is the bill of sale which was introduced in evidence:

"Know All Men by These Presents:

"That R. J. Dodson and Dock Davis, both of Blytheville, Arkansas, for and in consideration of the sum of Twelve Hundred and Seventy-five Dollars ($1275) cash in hand paid, receipt of which is hereof acknowledged, have bargained, sold and delivered, and by these presents do bargain, sell and deliver unto the said R. L.

Wade all of our second-hand merchandise on hand and all accounts located in what is known as Dodson-Davis Second-hand Store at 301-3 East Main Street, Blytheville, Arkansas, this being composed of what is known as second-hand furniture and accounts owed for same and we, R. J. Dodson and Dock Davis, further agree not to engage in the second-hand furniture business in Mississippi County for a period of three years from the date of making this instrument.

"To Have and to Hold the said goods or merchandise and accounts unto the said R. L. Wade, his executors, administrators and assigns, to him and his own proper use and benefit forever. And we, the said R. J. Dodson and Dock Davis, for ourselves and our heirs, executors and administrators, will warrant and defend the said bargained premises unto the said R. L. Wade, his executors, administrators and assigns from and against all persons whomsoever.

"In Witness Whereof, we have hereunto set our hands and seals this 30th day of December, 1935.

"R. J. Dodson, Dock Davis."

The appellee, R. L. Wade, testified in substance that the piece of paper handed him was a bill of sale dated December 30, 1935, and signed by R. J. Dodson and Ewell Davis; that he wanted something to show what he was getting; that he read the bill of sale when it was prepared, and objected that the truck was left out. He further testified that Mr. Reed and his stenographer, Mr. Davis and Mrs. Dodson and witness were present at Mr. Reed's office at the time the bill of sale was finally made; that when he made the objection about the truck being left out, Mr. Davis, Mr. Dodson and Mr. Reed all said it was all right; that it would be perfectly all right to pay the money and accept it just as it was, and that he paid the money and got the keys to the store; that he never did have the truck in his possession, but that the key was in the truck and it was used to make deliveries in by Mr. Dodson, who was working for the witness the first week after the sale; that Mr. Dodson worked for one week and then took some insurance papers out of the safe, and he then got in the truck and left. Ap-

pellee further testified that he paid Mr. Reed for drawing up the bill, and that all of this conversation in regard to the truck was had before the bill of sale was passed; that the bill of sale was signed, the original delivered to witness, and the money paid over.

Ewell Davis testified in substance that he and Mr. Dodson agreed to sell the stock to the appellee and they went to Mr. Reed's office to write out the agreement; that the agreement was written and Mr. Wade read it; he said something about a truck and they said it was not necessary to put the truck in the bill of sale; that Mr. Dodson conducted all of the negotiations leading up to the final agreement of the parties; that the conversation about the truck was had before the bill of sale was delivered and the money paid.

J. W. Jenkins testified in substance that he had a conversation with Mr. Dodson in a joking way; asked him if he had sold the "nigger" with the business and he answered "Yes," and asked him if he had sold the truck. That witness had no truck at that time and was thinking that he might have a chance to buy the truck cheap.

Mildred Cudd testified in substance that on December 30, 1935, she was employed in Mr. Reed's office and typed the bill of sale in question; that after it was read Mr. Reed said, "What about the truck?" and that Mr. Dodson said that the "truck goes too." That Mr. Reed then said, "If you gentlemen agree, there is no need to write it in the contract." She further testified that Mr. Wade accepted the bill of sale and took the original, and that Mr. Dodson and Mr. Davis took the other, and Mr. Wade paid them the money.

Harold Butler testified that the value of the truck in question was $250. The appellant moved the court to direct the jury to return a verdict in his favor, which motion was overruled, and exceptions saved.

R. J. Dodson testified in substance that he conducted the negotiations for the sale of the Dodson-Davis Second-hand Furniture Store and that on December 26, 1935, he arrived at an agreement with Mr. Wade; that on the following Monday Mr. Wade returned to Blytheville

and required that the bill of sale be prepared; that they went to Mr. Reed's office for that purpose, told Mr. Reed what the agreement was, and he prepared the bill of sale and that all agreed that it was all right. The bill of sale was signed and the money paid over and there was nothing mentioned about a truck. Witness further testified that he worked for Mr. Wade for a week; that Mr. Wade had another truck that he used in the business when it was not hauling household goods from Marked Tree to Blytheville; that witness used his Chevrolet truck to go home and to come back to the store; that Mr. Wade paid him for his week's work and that on Monday morning he took the truck and left; that late that afternoon Mr. Wade called him up and asked him when he could get the truck, and witness replied: "You did not buy the truck." Witness further testified that Mr. Reed read the contract aloud and said that contract stood up in the supreme court and ought to hold good, and that the bill of sale was signed, delivered and the money paid and accepted.

It is urged that the judgment should be reversed because the court erred in submitting to the jury the question of whether the contract was ambiguous, and in permitting parol evidence to be introduced to vary or contradict the terms of the bill of sale.

While some of the judges are of the opinion that the writing was ambiguous, we find it unnecessary to decide that question. If the contract was not completed until the agreement in Reed's office, and the parties there agreed that the truck was included in the property purchased by Wade, then the rule of parol evidence has no application.

When was the contract completed? "In order that there may be an agreement, the parties must have a distinct intention common to both and without doubt or difference. Until all understand alike, there can be no assent, and therefore no contract. Both parties must assent to the same thing in the same sense and their minds must meet as to all the terms." 13 C. J. 263-64.

This court has many times held that in order to make a contract, there must be a meeting of the minds as to

all terms. *Southern Surety Co.* v. *Phillips,* 181 Ark. 14, 24 S. W. (2d) 870; *Ashton Glassell Co., Inc.* v. *Mansfield Lbr. Co.,* 183 Ark. 895, 39 S. W. (2d) 324; *Roberts* v. *Hass,* 169 Ark. 774, 276 S. W. 603.

Mr. Wade testified, and he was corroborated by other witnesses, that when the bill of sale had been signed and was handed to him to read, he rejected it. It did not include the truck. He was then told, according to the preponderance of the evidence, that the truck would be included, and that Mr. Reed said that if they all agreed to that there was no use to write it in the bill of sale, and it was agreed at that time that they would turn over the keys, the truck and everything to Wade, and upon that agreement he paid the money.

The truck had painted on it "Davis & Dodson, Second-hand Furniture." The jury was justified in finding that the preponderance of evidence clearly showed that they reached their final agreement at Reed's office, and the truck was included. This being true, it is immaterial whether the bill of sale was ambiguous or not. The evidence was competent to show what the contract was.

This court said: "It is a well-settled rule of evidence that where a written contract is made, unambiguous and complete in its terms, parol evidence is not admissible to contradict, vary or add to any of its terms. *Dalhoff Construction Co.* v. *Maurice,* 86 Ark. 162, 110 S. W. 218; *Boston Store* v. *Schleuter,* 88 Ark. 213, 114 S. W. 242; *Bradley Gin Co.* v. *J. L. Means Mach. Co.,* 94 Ark. 130, 126 S. W. 81; *Cox* v. *Smith,* 99 Ark. 218, 136 S. W. 978.

"But this rule of evidence applies only to those written contracts which have been fully executed and finally consummated. Parol testimony is always admissible to show that a purported written contract was not concluded as a completed contract, and that the written instrument, though signed, was not in fact finally executed and finally delivered as a contract." *American Sales Book Co.* v. *Whitaker,* 100 Ark. 360, 140 S. W. 132, 37 L. R. A. (N. S.) 91.

The testimony was introduced in this case, not for the purpose of varying or contradicting the terms of

the bill of sale, but for the purpose of showing that no contract was made, until it was finally agreed to in Reed's office.

"The rule is well-established that oral testimony cannot be admitted for the purpose of varying or contradicting the terms of a written contract, but, according to the appellees' testimony in this case, this lease was not to be effective until the escrow agreement was signed, and the lease itself was to be deposited in escrow with the Bankers' Trust Company. If this testimony was true, then there was no contract made, because the escrow agreement was never signed, and the lease was not deposited.

"The testimony of appellees was clearly admissible, not as contradicting a written contract, but to show that no contract was ever made." *Jordan* v. *Winooski Savings Bank,* 187 Ark. 212, 58 S. W. (2d) 942.

Even after a written contract is consummated it may be modified by oral agreement, or a substituted oral agreement may be entered into.

" 'It is well-settled in this state that parties to a written contract may, subsequent to its execution, modify it, and substitute a valid oral agreement therefor.' *Cook* v. *Cave,* 163 Ark. 407, 260 S. W. 49; *Elkins* v. *Aliceville,* 170 Ark. 195, 279 S. W. 379; *American Trust Co.* v. *McKee,* 173 Ark. 147, 293 S. W. 50; *J. C. Englemen, Inc.* v. *Briscoe,* 172 Ark. 1088, 291 S. W. 795." *Dewey Portland Cement Co.* v. *Benton County Lbr. Co.,* 187 Ark. 917, 62 S. W. (2d) 649.

The instructions by the court were more favorable to ·appellant than he was entitled to, because the evidence was competent whether the bill of sale was ambiguous or not. It was competent to show that no contract was made up to the time the conversation was had in Mr. Reed's office. The jury was justified in finding that the preponderance of evidence shows what that contract was when consummated, and there is no conflict in the evidence except Mr. Dodson says the truck was not mentioned.

"The construction placed upon a contract by the parties is entitled to great weight and will generally be

adopted by the court in giving effect to its provisions. *Coca-Cola Bottling Co. of Arkansas* v. *Coca-Cola Bottling Co.,* 183 Ark. 288, 35 S. W. (2d) 579; *Craig* v. *Golden Rule Ins. Co.,* 184 Ark. 48, 41 S. W. (2d) 769.'' *Duty* v. *Keith,* 191 Ark. 575, 87 S. W. (2d) 15; *Sydeman Bros. Inc.* v. *Whitlow,* 186 Ark. 937, 56 S. W. (2d) 1020; *Sternberg* v. *Snow King Baking Powder Co.,* 186 Ark. 1161, 57 S. W. (2d) 1057.

Courts may acquaint themselves with persons and circumstances that are subjects of the statement in a written agreement, and are entitled to place themselves in the same situation as the parties who made the contract. In the instant case, Wade lived at Earle. Davis and Dodson were in the second-hand furniture business in Blytheville. Wade knew no one in Blytheville except Davis and Dodson. When he wanted a statement of what he was purchasing, Davis and Dodson suggested Mr. Reed as the lawyer to write the statement. They went to Reed's office and Wade testifies in substance that the contract was consummated there, and he is corroborated by several other witnesses, and contradicted by no one except Dodson. Wade evidently looked over the property that he was to purchase, including the truck which had the sign, ''Davis & Dodson, Second-hand Furniture,'' painted on it. The undisputed testimony shows that the sellers delivered to Wade at the time a statement showing final payment on the truck.

The evidence is sufficient to sustain the verdict, and the judgment is affirmed.

Mr. Justice SMITH concurs in the judgment.