GATLING *v.* GOODGAME.

4-7846 192 S. W. 2d 878

Opinion delivered March 4, 1946.

*Gaughan, McClellan & Gaughan,* for appellant.

MINOR W. MILLWEE, Justice. Appellant, H. B. Gatling, as plaintiff in the circuit court, brought this action in unlawful detainer against appellees, Fred Goodgame and his wife, Ruth Goodgame, for possession of a dwelling house in the town of Bearden, Arkansas. The complaint alleged that the right of appellees to occupy the premises expired in January, 1945, and that they were guilty of unlawful detainer in refusing to vacate the premises after service of a written notice of February 19, 1945, to vacate the property within 10 days. Judgment was prayed for possession of the property, accrued rents since January 12, 1945, and damages.

The answer of appellees contained a general denial of the allegations of the complaint, and specific denial that their right to occupy the property expired in January, 1945, or that they were in unlawful possession of the property. Trial to a jury resulted in a verdict and judgment for appellees for possession of the property and in favor of appellant for the sum of $75 which represented rents accrued from January 12, 1945, to June 12, 1945, the date of trial.

Appellees rented the house from appellant in May, 1942, and the Goodgame family occupied the property as tenants from month to month at a monthly rental of $15. Mrs. Gatling, wife of appellant, and Mrs. Goodgame were the principal witnesses in the case, and they conducted most of the negotiations respecting the rental of the property. The two families were neighbors and such differences as arose between them on account of some pigs and a cow kept on the premises by appellees do not appear to have become serious until the fall of 1944 when it was announced that a large naval ordnance plant was to be constructed in the vicinity. Property values and rents began to soar as the result of this announcement, and rent control was established by the OPA in October or November, 1944.

The monthly rental was frozen at $15 and Mrs. Gatling was advised by OPA authorities that the rent could not be raised unless the house was converted into apartments. She was also advised that OPA regulations prohibited repossession of the property so long as appellees continued to pay rent unless the tenants were abusing the property. On the theory that appellees were abusing the property by keeping the cow and pigs on the premises, Mrs. Gatling secured a "release" from OPA to proceed under state law for recovery of possession of the house. A notice was caused to be served on appellees on or about December 29, 1944, demanding that they vacate the property on or before January 10, 1945. However, having accepted payment of rent to January 12, 1945, appellant caused another notice to be served on February 22, 1945, demanding possession within 10 days. Appellees failed to surrender possession and this action was filed on March 10, 1945. Appellees gave a cross-bond and remained in possession of the property.

It is undisputed that appellees made tender of the rents each month which was refused, and that they offered to pay $25 per month, or any increased rental which OPA might allow. Rents were payable on the 12th of each month. Appellees do not seem to have questioned the sufficiency of the notice to quit.

A request for a directed verdict for appellant for possession of the property at the conclusion of the testimony was refused. The court gave appellees' requested instruction No. 1 over the objections of appellant. This instruction required the jury to return a verdict for appellees for possession of the property if they found a new oral contract was entered into by the parties whereby appellees were given the right of occupancy for a period of a year from October, 1944, at the same monthly rental of $15. Appellees did not plead an oral lease for a year in their answer, but in the course of her examination as a witness, Mrs. Goodgame testified about a conversation with Mrs. Gatling in October, 1944, in which the latter was asked if she wanted possession of the house and replied in the negative, saying: "I want you to keep it this year." Mrs. Goodgame was examined at length on this phase of the conversation. The gist of her testimony on the question of a new contract for a year is set out in her final answers to questions of her counsel on that point on redirect examination, as follows: "Q. Where were you at the time this conversation took place? A. Mrs. Gatling stopped at my house. Q. Where you are living now? A. Yes, sir. Q. And (Mrs. Gatling) said that you could stay there that year? A. Yes, sir; that is what she said. Q. She said 'you may stay in the house a year'? A. I says, 'If you want the house, tell me about it,' and she says, 'I don't want the house; I want you to stay there this year.' Q. She wanted you to stay there this year? A. She said they didn't know what they were going to do, 'we don't know what the plans would call for.' "

We agree with appellant that this testimony was insufficient to establish an oral contract for the lease of the property for one year from October, 1944, to October, 1945, at a monthly rental of $15. It must be remembered that Mrs. Goodgame was testifying in June, 1945, about a conversation that occurred in October, 1944. Each time the witness was asked to give the exact language used by Mrs. Gatling, she answered by quoting Mrs. Gatling as saying, "I want you to stay there this year." We think it is clear from the testimony of Mrs. Goodgame that the statements attributed to Mrs. Gatling

had reference to the calendar year of 1944, and not to a period of one year from October, 1944. Even if the answer of Mrs. Gatling amounted to an offer to rent the premises for an additional year, Mrs. Goodgame does not testify that it was accepted by any promise or agreement on her part to stay in the house another year. The amount of the monthly rentals was not mentioned in the conversation, and there were later negotiations between the parties in attempts to adjust the matter of rents which tend to show that no agreement was reached on that point.

The burden was upon appellees to prove the oral lease for one year. *Dunn* v. *Turner Hardware Company*, 166 Ark. 520, 266 S. W. 954. In the case of *Southern Surety Company* v. *Phillips*, 181 Ark. 14, 24 S. W. 2d 870, this court said: ''A contract is an agreement which creates an obligation. There must be competent parties, a subject-matter, a legal consideration, mutuality of agreement and mutuality of obligation. Agreement is the expression by two or more persons of a common intention to affect their legal relations. It consists in their being of the same mind and intention concerning the matter agreed on.''

In the case of *Keating* v. *Michael*, 154 Ark. 267, 242 S. W. 563, this court had under consideration a written lease which provided for a renewal, but there was no provision fixing the rental under the renewal clause. In that case it was said: ''Here no provision was fixed in the contract except such rental value as the parties might agree upon. They might never agree, and so the case falls squarely within the general rule announced above and the contract is too uncertain and indefinite to be enforced.''

It is well settled that in order to make a contract, there must be a meeting of the minds as to all terms. *Dodson* v. *Wade*, 193 Ark. 534, 101 S. W. 2d 182. In *El Dorado Ice & Planing Mill Co.* v. *Kinard*, 96 Ark. 184, 131 S. W. 460, it was held (to quote a headnote) that, ''A contract which leaves it entirely optional with one of the

872

parties as to whether or not he will perform his promise is not binding upon the other.''

When the testimony relating to the alleged agreement for an oral lease for a year is considered in the light most favorable to appellees, as we must in testing its sufficiency, we find a lack of substantial evidence to establish the necessary elements of a binding contract by the parties. It follows that the trial court erred in giving instruction No. 1 requested by appellees. The complaint of appellant alleged damages, but we find the proof on this, and other issues, insufficiently developed. For the error in giving appellees' requested instruction No. 1, the judgment is reversed, and the cause remanded for a new trial. It is so ordered.