HANNA *v.* JOHNSON.

5-2308                                    344 S. W. 2d 846

Opinion delivered April 3, 1961.

*Bernard Whetstone,* for appellant.

*Shackleford & Shackleford,* for appellee.

JIM JOHNSON, Associate Justice. This is an appeal from a decree denying appellant, Naomi Hanna, the widow-beneficiary, damages against an organized brotherhood, (Teamsters Union), its secretary-treasurer-business agent, appellee E. F. Johnson, the assistant secretary-treasurer-business agent, appellee W. M. Hayes, and her late husband's employer, appellee Gibbon Petroleum Transport, (hereinafter called Gibbon), for failure to procure life and accident insurance benefits and to pay and/or see that the premiums were paid thereon.

The deceased, S. H. Hanna, was a truck driver and went to work for Gibbon's Petroleum Transport, one of the appellees, in September 1955. At that time he did not belong to the Brotherhood. Apparently Gibbon began paying $2.25 a week insurance premiums to the Union insurance company on Hanna 30 days after his employment in accordance with a contract Gibbon had with the Brotherhood.

On January 19, 1956, Hanna signed a written application at the office of his employer, Gibbon, for a group policy with Equitable Assurance Society of the U. S., which application authorized the deduction of $4.63 per month insurance premiums from his pay check. Gibbon's employee testified that Gibbon added another $7.35 to this to make a total premium for $2,000 coverage for natural death or $4,000 for accidental death. Although signed January 19, 1956, the Equitable policy took effect December 14, 1955. The $4.63 per month was deducted from Hanna's check up to the time of his accidental death, August 7, 1956.

In March of 1956, Hanna, having formerly been a member of the Brotherhood (Teamsters Union) prior to his employment with Gibbon, applied for reinstatement in the Union. Hanna's reinstatement was accepted at a Union meeting held in El Dorado on March 18, 1956.

Appellee Hayes conducted the meeting and as a procedure for making application for Union membership certain forms were to be completed. During the meeting appellee Hayes notified the men present, including Hanna, that there were two insurance plans in effect for employees of Gibbon; one being the Union plan and the other Gibson's plan, but only coverage under one plan was permissible. The applications signed at the meeting were processed and as a result Hanna was issued a certificate by the insurance company under the Union policy. However, Hanna, at the time he applied for the Union plan, was covered under the employer's policy. As stated above, the employer's policy premiums were paid part by the employee out of payroll deductions and the balance by Gibbon. The Union policy premiums were paid by Gibbon. It was a policy of management which prevented a single employee from coverage under both policies because of the prohibitive cost to the employer. It was required by Gibbon that an employee desiring to go from one insurance plan to another notify the personnel office at his home terminal of such election or change and a form was completed in this connection.

Although Hanna was issued a certificate under the Union plan, he never advised the personnel office of Gibbon to transfer him from the employer's plan back to the Union plan and as a result no premiums were paid on the Union policy subsequent to 1955. The employer's plan continued with Hanna paying a share of the premiums and Gibbon paying the greater part. On August 11, 1956, Hanna was killed and his wife-beneficiary, appellant herein, was paid under the employer's policy the sum of $4,000.

After Hanna's death, appellant was contacted by appellee business agent who offered her every assistance. Sometime later Hayes contacted her in person in El Dorado (from Shreveport) and took her insurance certificates and part of proof of death in support of claim and instructed her as to forwarding balance of proof to him. Upon receipt of all proofs in support of claim, appellee Hayes forwarded them to Union insurance com-

pany which, after some delay, denied liability on grounds that premiums had not been paid.

Gibbon had a system of bookkeeping which included a form prepared once a month listing the names and amounts of insurance premiums he was paying direct to Union insurance company, copy of said form being furnished to the business agents. Hanna's name was omitted.

When the Union Insurance Company refused to pay appellant, she filed in the United States District Court for the Western District of Arkansas, El Dorado Division, for the $5,250 plus penalty and attorney's fees. Appellee Johnson and one of Gibbon's employees in that case testified to the fact, and the Court found, that the issuance and deliverance of the insurance certificate was a mistake. The trial court directed a verdict against appellant on the basis that the evidence conclusively showed that Gibbon paid no premiums on behalf of Hanna to the Union Insurance Company subsequent to 1955, resulting in the group policy being lapsed as to Hanna for non-payment of premiums prior to Hanna's death on August 11, 1956. This ruling was affirmed by the United States Circuit Court of Appeals. *Hanna* v. *Insurance Co.*, 260 Fed. 2d 244.

Appellant then instituted this present suit against the Brotherhood, the business agent and assistant business agent personally and individually, and the employer, alleging that there existed an oral agreement between her deceased husband and appellees whereby the former would be insured under the Union plan, this oral agreement having been made at the Union meeting in March 1956. She further alleged that appellees, Hayes and Johnson, were responsible under the oral agreement to secure the Union plan coverage for Hanna. By virtue of the denial of coverage under the Union policy in the Federal Court, appellant brought this action urging appellees had breached the oral agreement to procure the Union coverage and she would be entitled to recover as against them the amount of the coverage under the

Union plan, $2,500 for life insurance and $2,700 for accidental death, or a total of $5,250. In addition, appellant states she should also be entitled to recover her expenses of the Federal Court litigation. Appellant seeks to recover in this action the total sum of $10,000 from appellees.

Appellant also alleged that Gibbon was the principal of appellees, Hayes and Johnson, and as a result of this relationship she is entitled to recover against all the appellees, either jointly or severally, the sum of $10,000 as her damages for breach of the alleged oral agreement.

Appellees have denied the existence of an oral agreement to procure insurance and contended there was no duty upon them to secure insurance coverage for Hanna under the Union plan.

Appellant filed certain interrogatories addressed to each of defendants (appellees) and the trial court quashed them all over appellant's objection.

The court dismissed as to the brotherhood on the ground that it couldn't be sued and after a full hearing found the evidence insufficient to support a judgment in favor of appellants. Hence, this appeal.

There is no contention here that the trial court erred in the dismissal as to the Brotherhood. However, for reversal appellant does masterfully argue seven points, six of which, in effect, question the sufficiency of the evidence. The remaining point is a contention that the trial court erred in quashing the interrogatories propounded to the appellees.

### INTERROGATORIES

The record reveals that appellant propounded 14 interrogatories to the appellees. Exactly the same interrogatories were propounded to each. Interrogatories 3 through 10 are as follows:

"3. Tell everything you know with reference to the allegations contained in paragraph (6) of Plaintiff's Complaint.

"4. Tell everything you know with reference to the allegations contained in paragraph (7) of Plaintiff's Complaint.

"5. Tell everything you know with reference to the allegations contained in paragraph (8) of Plaintiff's Complaint.

"6. Tell everything you know with reference to the allegations contained in paragraph (9) of Plaintiff's Complaint.

"7. Tell everything you know with reference to the allegations contained in paragraph (10) of Plaintiff's Complaint.

"8. Tell everything you know with reference to the allegations contained in paragraph (11) of Plaintiff's Complaint.

"9. Tell everything you know with reference to the allegations contained in paragraph (14) of Plaintiff's Complaint.

"10. Tell everything you know with reference to the allegations contained in paragraph (15) of Plaintiff's Complaint."

Appellees filed a motion to quash the interrogatories on the grounds that, "the interrogatories are irrelevant and immaterial and do not seek such information as is contemplated by Section 28-355 of the 1947 Statutes Annotated of Arkansas, and that such interrogatories are not reasonably calculated to lead to the discovery of admissible evidence, and further that they would not be of any benefit to the appellant in the discovery of witnesses or any other information that would be of benefit to her and further that the interrogatories are annoying, embarrassing and oppressive and would require unreasonable and unwarranted time and expense."

The trial court after a hearing granted the motion to quash.

Appellant argues *inter alia* that if this Court should hold that she is entitled to no relief by virtue of the trial court's granting of the motion to quash that the effect of such holding would be to nullify the discovery statute relating to interrogatories.

Although this particular question has not previously been presented to this Court and since the Arkansas Discovery Statutes are taken from the Federal Rules of Procedure, we find ample authority from the Federal Courts to sustain the action of the trial court.

In *Newell* v. *Phillips Petroleum,* 144 F. 2d 338, the Court said:

". . . The federal rules authorizing any party to propound interrogatories to an adverse party should be accorded a liberal interpretation, but the District Court is vested with reasonable discretion in determining whether a party is entitled to have interrogatories answered, and its action will not be disturbed except in case of abuse of discretion."

Where interrogatories appeared to be immaterial, some cumulative, some onerous, and some unreasonably burdensome, the Court did not abuse its discretion in sustaining objections.

In *U. S.* v. *Matles,* 19 F.R.D. 319, the Court agreed that the rule must be applied with discretion. In that cause the defendant alleged that he would be handicapped in preparation for trial if his interrogatories were not answered. In response, the Court stated:

". . . Moreover, it must be noted that this is a non-jury action, and the trial Judge will have the power, when the Government witnesses are examined at the trial, to grant such adjournment as he may deem fit and proper on a substantial showing by the defendant of the necessity for his so doing. . ."

This cause was tried before the Chancellor and if appellant believed she needed additional information it

would have been entirely in order to request additional time from the Court.

Certainly it cannot be said that to answer interrogatories 3 through 10 as set out above would not be "unreasonably burdensome". In our view, the Arkansas Discovery Statutes were never intended to require a party answering interrogatories to write a complete essay relative to all of the allegations contained in a complaint. In the case at bar, after looking at the case as a whole, we find that all the interrogatories propounded to the parties had theretofore been fully answered in the proceedings in Federal Court and those interrogatories could hardly be calculated to lead to discovery of matters that were not already known. Therefore, we conclude that there was no abuse of the Court's discretion in quashing the appellant's interrogatories.

### SUFFICIENCY OF THE EVIDENCE

In order for appellant to establish her case it was necessary for her to prove by a preponderance of the evidence the existence of an oral agreement between the appellees, Hayes and Johnson, to secure for her deceased husband coverage under the Union plan. *J. H. Magill Lumber Co.* v. *Lane-White Lumber Co.,* 90 Ark. 426, 119 S. W. 822; *Williams* v. *Chicago, Rock Island & Pacific Railway,* 109 Ark. 82, 158 S. W. 967. In this case the appellant urges the existence of an oral agreement and it was incumbent upon her to prove such agreement was a valid one. *Stooksberry* v. *Pigg,* 172 Ark. 763, 290 S. W. 355.

Since this is obviously a question of fact, it was necessary that the appellant show by a preponderance of the evidence the existence of such parol agreement, a breach and damages.

A Court cannot make a contract for the parties but can only construe and enforce the contract which they have made, and if there is no meeting of the minds there is no contract. *Irvin* v. *Brown Paper Co.,* 52 F. Supp.

43, rev'd., 146 F. 2d 232. It is well settled that in order to make a contract there must be a meeting of the minds as to all terms. *Dodson* v. *Wade,* 193 Ark. 534, 101 S. W. 2d 182; *Gatling* v. *Goodgame,* 209 Ark. 867, 192 S. W. 2d 878.

With these cardinal principles of law as set out above to guide us as to the test appellant was required to meet, and after carefully reviewing the record in its entirety, we have no choice but to find that the decree of the Chancellor holding that appellant failed to meet the test was not against the weight of the evidence.

Affirmed.