Ben HUNT, Jr. and Jeanne B. HUNT, Husband and Wife; George W. BROWN and Coweta Jean BROWN, Husband and Wife *v.* McILROY BANK AND TRUST

CA 81-21                                       616 S.W. 2d 759

Court of Appeals of Arkansas
Opinion delivered June 3, 1981

*Everett & Whitlock*, for appellants.

*Pettus, Johnson & Gibson*, for appellee.

Tom Glaze, Judge. The appellee, McIlroy Bank and Trust, filed a foreclosure suit against the appellants, alleging that appellants were in default on six separate promissory notes due and payable to the appellee. The appellants are Ben Hunt, Jeanne Hunt, George Brown and Coweta Brown, all of whom were doing business at S.B.H. Farms. Appellants filed a general denial, alleged a number of affirmative defenses and counterclaimed against appellee for $750,000, contending appellants were damaged as a result of certain misrepresentations and a breach of an oral contract by the appellee to loan appellants monies. The trial court found that appellants failed to produce evidence of fraud or misrepresentation, nor was there proof of an oral agreement or contract requiring appellee to loan monies to appellants. The court dismissed appellants' counterclaim and entered judgment in favor of appellee on its complaint.

One of appellants' points for reversal arises out of their contention that in October, 1976, the appellee, through its agricultural loan officer, Don Larkin, orally contracted to loan appellants an indefinite amount of monies which would be sufficient to build hog houses, to buy livestock and to generally finance the expansion of their existing farming operation. The appellee argues, and the trial court found, that no contractual agreement was reached between the parties because the terms discussed by the parties were so indefinite and uncertain that neither side could have performed the agreement with any degree of certainty. Since appellants are the parties who urge the existence of an oral agreement, it was incumbent upon them to show by a preponderance of the evidence the existence of such parol agreement, a breach and damages. *Hanna* v. *Johnson*, 233 Ark. 409, 344 S.W. 2d 846 (1961).

In reviewing the record before us, we keep foremost in mind two legal principles when deciding whether a valid contract was entered into by appellants and appellee in October, 1976: (1) A court cannot make a contract for the parties but can only construe and enforce the contract which they have made; and if there is no meeting of the minds, there

is no contract. *Irvin v. Brown Paper Mills Company*, 52 F. Supp. 43 (D. C. Ark. 1943), rev'd. on other grounds, 146 F. 2d 232 (8th Cir. 1944); and (2) It is well settled that in order to make a contract there must be a meeting of the minds as to *all* terms. *Hanna v. Johnson, supra*, and *Gatling v. Goodgame*, 209 Ark. 867, 192 S.W. 2d 878 (1946). The essential elements of a contract were recited by the court in *Gentry v. Hanover Insurance Company*, 284 F. Supp. 626 (D. C. Ark. 1968), *viz.*: (a) competent parties, (b) subject matter, (c) legal consideration, (d) mutual agreement, and (e) mutual obligations.

After a study of the evidence presented at trial, we have no hesitancy in agreeing with the chancellor that the appellants failed to prove a contract existed between themselves and the appellee. Appellee's officer, Larkin, and appellant Ben Hunt initially discussed the financing of the expansion of the S.B.H. Farm operation, but the total amount of loan proceeds was never decided. Hunt said that at one time Larkin told him he could have up to $750,000. Larkin testified that the appellee was willing to loan in excess of $500,000, and it could have been $700,000. Both Larkin and Hunt agreed that no interest rate or repayment terms were ever agreed upon. There apparently was some discussion that long term permanent financing would be necessary, but the terms of such financing were left to future determination. Meanwhile, short term notes were signed by appellants for loan proceeds so the farm expansion could commence. Although Larkin and Hunt may have generally agreed on a course of action as to the need for financing the farm project, they never agreed on the essential, much less all of, the terms of a contract to loan monies. There is no way that a court could take the general terms discussed between Larkin and Hunt regarding an open-ended loan with no repayment provisions and be asked to enforce an agreement without filling in necessary terms essential to the formation of a contract. The subject matter of the proposed agreement was indefinite and the mutual assent and obligations were so vague as to be unenforceable.

Appellants argue that all terms of a contract need not be supplied so long as the parties to a contract by their mutual actions furnish an index to its meaning. To support this

contention, appellants rely on *Swafford* v. *Sealtest Foods Division of National Dairy Products Corporation*, 252 Ark. 1182, 483 S.W. 2d 202 (1972). Appellants urge that they and appellee had depended on the future conduct of the parties to heal the uncertainty of the amount and the precise amortization of the loan. We believe that appellants give the court's holding in *Swafford* far too broad an interpretation and application to the facts at bar. The *Swafford* court dealt with a distributorship agreement and gave effect to the acts of the contracting parties in an effort to clear up uncertainties in the executed portion of the agreement. The court in *Swafford* did not attempt to supply terms to an executory contract. Even if we should attempt to review the acts of the parties here subsequent to the Hunt/Larkin discussions in October, 1976, it is difficult to see how that would help appellants. There were a series of promissory notes, mortgages and other documents executed, but these and the other contemporaneous actions taken by the parties still fail to tell us the total amount of monies to be loaned nor does it provide us with an index to determine how the parties intended the permanent financing to be arranged.

In anticipation that we might not hold that a valid agreement was existent in October, 1976, appellants argue further that appellee should be estopped from denying the validity of such a contract since appellants reasonably relied on certain acts and misrepresentations made by the appellee, particularly Larkin. It is this alleged misconduct of Larkin's which appellants contend should not only bar the foreclosure relief sought by appellee against the appellants, but also is the basis of appellants' action for damages for fraud even when no express contract has been shown. Thus, the equitable estoppel and clean hands defenses as well as the action for fraud asserted by appellants must rise or fall depending upon whether the chancellor clearly erred in not finding that appellee was guilty of misconduct or misrepresentation. Again we must disagree with the contentions of the appellants.

As has been mentioned previously, Larkin and Hunt agreed that appellee would loan monies in excess of $500,000, and Larkin believed it could have been as much as

$700,000. The appellee did loan appellants $589,000, which is certainly within the limits and figures stated by Larkin and Hunt. The clear inference from all the evidence indicates that even more monies would have been forthcoming to appellants if the Federal Reserve Examiners in May, 1977, had not classified the loans made to appellants because the value of the security pledged against the indebtedness had fallen below an acceptable level. Obviously, this fact alone restricted future actions between appellants and appellee. Nevertheless, on September 29, 1977, appellants and appellee entered into an oral agreement whereby appellee was to loan an additional sum of $235,000 subject to certain conditions. This was the sum which Hunt stated he needed to complete the project. Although there again is a dispute as to what the conditions were to which the loan was subject, it is clear that appellee was still attempting to work with appellants regardless of the action taken by the Federal Reserve Board. At this point in the negotiations between appellants and appellee, we can only conclude from the evidence that appellee was still acting in good faith to work with appellants. Hunt testified that he was happy with this new deal even though he was not perfectly satisfied because he had lost money during the summer of 1977. In view of these actions which took place subsequent to the Hunt and Larkin negotiations in October, 1976, we conclude that there was sufficient evidence for the chancellor to find and hold that the appellee was not acting wrongfully or fraudulently. In doing so, we acknowledge appellants' argument that Larkin asserted that appellee would make certain loan commitments which, due to the Federal Reserve, it was unable to honor. Contrary to appellants' contention, Larkin's representations did not meet the test of constructive fraud, *i.e.*, representations made by one (Larkin) who, not knowing whether they are true or not, asserts them to be true. See *Evatt* v. *Hudson*, 97 Ark. 265, 133 S.W. 1023 (1911). The record does not reflect that Larkin or appellee intentionally misled the appellants nor does it show that a fact asserted by Larkin was not true in October, 1976. Neither Larkin and the appellee nor the appellants contemplated the action taken by the Federal Reserve Board in May, 1977, when the negotiations took place between them in October, 1976. Certainly, this is not the type of misrepresentation intended

to be covered by the rule enunciated in *Evatt*. If Larkin had asserted, knowingly or unknowingly, a material fact to be true which was not true at the time of the representation, an actionable constructive fraud would lie. The facts before us fail to support such a conclusion or finding. From the evidence, we find no basis to bar appellee's foreclosure action under the theory of estoppel or unclean hands nor do we find any support for appellants' action for damages due to constructive fraud.

The last two issues raised by appellants involve the oral agreement reached between the parties in September, 1977. As previously mentioned, the appellee agreed to loan appellants $235,000. Appellants in turn were to pay the loan back at the rate of $50,000 plus interest annually, commencing in January, 1979, and they were also to complete their farm expansion project. There was a dispute between the parties as to whether additional collateral was also required of the appellants as well as a showing that the S.B.H. Farm could make a profit. Apparently, appellee advanced all of the $235,000 to appellants except for approximately $60,000 which amount was withheld until appellants pledged additional collateral. Appellants first claim appellee breached the September, 1977, agreement by withholding the $60,000, and, secondly, they contend this same agreement effectively changed the due dates on all prior notes executed by appellants and no payments on principal or interest were due and payable until January, 1979. At the time appellee filed this action, one $50,000 payment plus interest was due and in default by appellants.

Whether the parties agreed in September, 1977, that additional collateral was required of appellants was a question of fact determined by the chancellor. Admittedly, the testimony was in conflict on this issue. However, there was testimony given by two officers of appellee upon which the chancellor could premise his finding that additional collateral was required as well as the added fact that the Federal Reserve Examiners had already determined appellants should receive no further loans because the collateral was not sufficient. We are unable to reverse the chancellor's finding on this factual issue since it is not clearly against the

preponderance of the evidence. Rule 52, *Arkansas Rules of Civil Procedure*.

On the final issue raised by appellants, their argument would be well taken except they were clearly in default one payment plus interest on the September, 1977, agreement at the time this action was filed. The appellee and appellants were free to agree in September, 1977, on a different means or method to discharge the prior promissory notes executed by appellants. If the agreement and payment had been fully executed, appellants would be correct that the due dates and payment on the previously signed notes would have been changed to fall due on January of each year commencing in 1979. Until such an agreement is executed, it does not *pro tanto* extinguish or change the prior notes or the terms of each. See, *Vinson* v. *Wooten*, 163 Ark. 170, 174, 259 S.W. 366 (1924).

In accordance with the foregoing, we affirm the trial court's findings and decision.

Affirmed.