## FOUNDATION TELECOMMUNICATIONS, INC. *v.* MOE STUDIO, INC.

00-96 16 S.W.3d 531

Supreme Court of Arkansas
Opinion delivered May 4, 2000

234

*Andrew Miller,* Judge;

*Davis, Cox & Wright, PLC,* by: *Laura J. Andress,* for appellant.

*Jay B. Williams, P.A.,* by: *Jay B. Williams,* for appellee.

RAY THORNTON, Justice. Moe Studio, Inc., brings this appeal on petition for review of the decision of the Arkansas Court of Appeals[1], alleging that the court erred in reversing and remanding its judgment against Foundation Telecommuni-

---

[1] *Foundation Telecom., Inc. v. Moe Studio, Inc.,* 69 Ark. App. 20, 9 S.W. 3d 542 (2000).

cations, Inc., on the grounds that the election of the special judge who heard the case did not comply with the requirements of Arkansas Constitution article 7, section 21. When this court grants a petition to review a case decided by the court of appeals, we review the case as if it was originally filed in the supreme court. *McKay v. McKay*, 340 Ark. 171, 5 S.W. 3d 525 (2000). Because we agree with Moe Studio that Foundation failed to meet its burden to overcome the presumption of validity that accompanies the election of a special judge, we affirm the trial court.

Moe Studio brought suit against Foundation in municipal court and prevailed; Foundation appealed that decision. The case was tried *de novo* in circuit court, and Moe Studio again prevailed. Foundation appealed that decision to the court of appeals alleging three points on appeal: (1) that the special judge hearing the case was not properly elected to hear the case and therefore the judgment rendered was void; (2) that the trial court erred in finding that Foundation's employee had apparent authority to bind the corporation to enter into an oral contract; and (3) that the trial court committed error in finding that substantial evidence supported the determination that a valid oral contract existed. The court of appeals held that the judgment rendered was void and dismissed the appeal without reaching the remaining allegations of error.

This case was tried to the bench in Benton County Circuit Court on January 11, 1999. Division I Circuit Judge Tom Keith was not present on that day; instead, local attorney Andrew Miller, as special judge, presided over the trial without objection from appellant during the course of the proceedings. At the conclusion of the trial, Special Judge Miller found in favor of Moe Studio and awarded $4715 in damages for work completed. He stated from the bench that Rhonda Roper, an employee of Foundation, possessed the apparent authority to bind the company and that a valid contract was entered into by the parties with the consent of George Livergood, the president of Foundation. Miller did not accept Foundation's contention that Moe Studio was engaging in a proposal process and producing work on speculation to be considered along with other bidders for the job of preparing sales brochure packets for Foundation; rather, he found that a valid contract was formed by offer and acceptance with the price subject to change based upon the requests of the client.

An order was rendered and provided to the attorneys with the understanding that it would be entered absent objection by either party. Foundation's counsel responded in a letter to Judge Keith, alleging that the special judge did not meet the requirements of Ark. Code Ann. § 6-10-115 (1999), which provides for trial by temporary judge by stipulation of the parties, and objecting to the entry of his order. In a second letter, counsel for Foundation alleged that she had not been aware that the presiding judge was a special judge and would have requested a continuance had she known. Moe Studio responded by letter that Foundation's counsel had been apprised of the situation and that a special judge would be hearing the case and noted that no objection had been made until after the verdict was rendered. No pleading or motion was filed, and no ruling was made by Judge Keith on the issue raised in Foundation's correspondence. The judgment was signed and entered on January 28, 1999.

On appeal, Foundation contended that the circuit court failed to follow the requirements of article 7, section 21, of the Arkansas Constitution, and thus, the special judge was without judicial authority and his actions were *coram non judice*. Moe Studio responded that the issue was not preserved for appellate review because Foundation had failed to raise the objection below. The court of appeals held that because the record on appeal did not reflect that an election was held, there could be no objection to the election procedure, and reversed the judgment and remanded the case for a new trial.

■ Article 7, section 21, of the Arkansas Constitution, pro-viding for the election of special judges, and section 22, permitting circuit judges to temporarily hold court for each other, are the modes expressly set out and are exclusive of all other methods of temporarily replacing a circuit judge. Any statute providing for a different method is unconstitutional. *Wessett Bros. Drill. v. Crossett Sch. Dist., No. 52*, 287 Ark. 415, 701 S.W.2d 99 (1985). The constitution provides that a special circuit judge or chancellor be elected by the attorneys in attendance on the court and that the proceedings be entered upon the record at large. *Abercrombie v. Green*, 235 Ark. 776, 362 S.W.2d 12 (1962). If the election was not in the manner prescribed by law, the special judge had no judicial power, his acts were *coram non judice*, and, on direct attack, the decree must be set aside as void and the cause remanded for trial as

if it had never been tried. *Titan Oil & Gas, Inc. v. Shipley*, 257 Ark. 278, 517 S.W.2d 210 (1974). It is not required that the reasons for the election be stated upon the record of the proceedings for the election of a special judge under this constitutional provision and the presumption will be indulged that the facts that make the election necessary exist. *Id.*

■ The election of a special judge is presumed to be valid, *Travis v. State*, 328 Ark. 442, 944 S.W.2d 96 (1997), and, under the law, that election is impervious to attack unless the facts that would defeat the election are recited in the record. *Metal Proc. Inc. v. Plastic & Recon. Assoc., Ltd.*, 287 Ark. 100, 687 S.W.2d 87 (1985). It is the appellant's burden to produce a record showing that an attack on the election was made in the trial court, *Travis, supra,* and it is anticipated that the trial court, by the regular circuit judge, will make a finding whether the special judge was duly elected. *Metal Proc. Inc., supra.* Because the record is devoid of any facts that would defeat the election, and because appellant failed to raise this issue to the trial court in a proper pleading and obtain a ruling upon the issue, we must first determine whether the question is preserved for appeal.

■ An issue must be presented to the trial court at the earliest opportunity in order to preserve it for appeal. Even a constitutional issue must be raised at trial in order to preserve the issue for appeal. *Fuller v. State*, 316 Ark. 341, 872 S.W.2d 54 (1994). A defendant may not wait until the outcome of a case to bring an error to the trial court's attention. *Id.* Furthermore, parties cannot change the grounds for an objection on appeal, but are bound on appeal by the scope and nature of their objections as presented at trial. *Hinkston v. State*, 340 Ark. 530; 10 S.W. 3d 906 (2000). Even if we were to accept Foundation's correspondence to the judge as a valid objection, notwithstanding that there was no ruling on the issue, the objection raised to the trial court did not point out the reasons it believed the procedure was defective. We note further that the letter only contended that the selection of the special judge did not meet the statutory requirements of Ark. Code Ann. § 6-10-115. Only on appeal has Foundation sought to raise the issue of compliance with the constitutional provisions for conducting an election.

■ ■ On appeal the burden is placed on the challenger to show that he properly challenged and offered specific facts and

reasons why the election was void. The proceedings of the circuit court are presumed to be regular, unless the contrary is made to appear upon the record of the cause in which error is alleged. *Sweeptzer v. Gaines*, 19 Ark. 96 (1857). "Nothing short of the proper record to the contrary can rebut the violent presumption, that the regular Judge, in the midst of his regular term, would not permit a mere usurper to take the bench and presume to administer justice to his Court." *Id*. In order to present any question of that sort for our review here, the power and authority of the special judge must have been questioned in the court below, and the grounds of the objection stated in the record. Nothing of this sort appears in this record. *See Fernwood Mining Co. v. Pluna*, 136 Ark. 107, 205 S.W.2d 822 (1918)(*citing Blagg v. Fry*, 105 Ark. 356, 151 S.W. 699 (1912); *Caldwell's Adm'r. v. Bell*, 6 Ark. 227 (1841); and *Caldwell v. Bell & Graham*, 3 Ark. 419 (1840)). Rather than merely writing a letter questioning the authority of a special judge, on the basis of allegations unsupported by the record they have presented, the record might have been developed by filing the appropriate pleadings and giving the regular circuit judge the opportunity to review the proceedings which occurred before this case was called. This procedure would not only provide the trial court an opportunity to consider the challenge, it would also provide us an opportunity to reach the issue. To allow Foundation to challenge the selection of a judge on one ground below, and then to pursue a different objection on appeal would defeat not only the presumption in favor of such elections but also our long-standing rule that issues must be preserved for appeal and that the burden is upon the movant to bring forth a record to support his contentions on appeal. Therefore, we hold that Foundation has failed to meet its burden to challenge the validity of the election of the special judge and turn now to the remaining points on appeal regarding the merits of his decision.

 Foundation contends that the trial court erred in holding that an employee of the company had apparent authority to bind the corporation or to enter into a contract with Moe Studio on behalf of the corporation. In bench trials, the standard of review on appeal is whether the judge's findings were clearly erroneous or clearly against the preponderance of the evidence. *Scheuck v. Burris*, 330 Ark. 780, 957 S.W.2d 702 (1997). A finding is clearly erroneous when, although there is evidence to support it, the reviewing

court is left with a definite and firm conviction that a mistake has been made. *Wade v. Arkansas Dep't. of Human Servs.*, 337 Ark. 353, 990 S.W.2d 509 (1999).

Apparent authority of an agent is such authority as the principal knowingly permits the agent to assume, or which he holds the agent out as possessing; such authority as he appears to have by reason of the actual authority which he has; or such authority as a reasonably prudent man, using diligence and discretion, in view of the principal's conduct, would naturally suppose the agent to possess. *General Motors Acc. Corp. v. Salter*, 172 Ark. 691, 290 S.W. 584 (1927). The principal is bound by all the acts of his agent coming within the apparent scope of the authority conferred upon him. *Crossett Lumber Co. v. Fowler*, 137 Ark. 418, 208 S.W. 786 (1919). Every delegation of authority, whether it be general or special, express or implied, unless its extent be otherwise expressly limited by the same instrument conferring it, carries with it as an incident, the power to do all those things which are necessary, proper, usual, and reasonable to be done in order to effectuate the purpose for which it was created.*Brown v. Brown*, 96 Ark. 456, 132 S.W. 220 (1910). When the evidence as to the nature and extent of an agent's authority is in conflict, it is a question of fact for the fact-finder. *Southland Mobile Home Corp. v. Chyrchel*, 255 Ark. 366, 500 S.W.2d 778 (1973). An agency can be established by circumstances, and any evidence tending to establish agency is admissible. *Id.*

The evidence presented at trial was that Mark Moesta, general manager of Moe Studio, met with three employees of Foundation, including Rhonda Roper, to discuss designing a sales packet on July 17, 1997. The company president appeared for a brief introduction, then they were provided with a copy of Foundation's current sales packet, samples of what they wanted to include in their new packet, and specific instructions for the copy, cover, and interior of the packet. Moesta was told that Roper would be his contact person in the company and were given an October 1st deadline and told to "get to work." On their way out, the company president, Mr. Livergood, stopped Moesta and said, "You guys are under the gun, so let's get to work." Moe Studio's designers started work on the project immediately and Moesta prepared a pricing sheet outlining the cost of the project based on their requests, which he faxed to Roper on August 12, 1997. The following day, Roper requested that the studio find a less expensive method of obtaining photo-

graphs for the pamphlets and resubmit the pricing sheet. Two weeks later Moesta submitted new photography samples to Roper by fax, then had a second meeting at Foundation with Roper on August 29th to view sample pages of the layout design. Roper requested specific changes to the designs, and, over the next four weeks, selected photographs from those submitted by Moesta. Roper also sketched out basic design ideas, or "thumbnails," and made numerous and explicit changes to the samples provided.

On September 29th, Moesta faxed to Roper a revised price sheet showing the photography changes and other costs associated with the new design. Moesta also testified that Roper told him around that time not to worry about the October 1st deadline, just to get them mock-ups of the packet as soon as possible. At this point, according to Moe Studio's evidence, the work on the project was ninety-five percent complete and that all that remained was the final printing of the color brochures. Then, on October 3, 1997, Roper called Moesta and told him that they were pulling Moe Studio off the job and were going to look for another contractor to do the job. Moesta responded that he would be sending a bill for the work completed and did so on November 4, 1997. The final bill, less a five percent reduction for the uncompleted work, was $4,715.

▮▮▮▮ On appeal, this court defers to the trial court's credibility assessments. *McKay, supra.* Sufficient evidence exists in the record to support that the trial judge's findings were not clearly erroneous or against the preponderance of the evidence. The evidence presented by Moe Studios supports the finding that Roper acted with the apparent authority from the principal, Mr. Livergood, to enter into an oral contract with Moe Studio. Notwithstanding Foundation's evidence that Moesta was told that only the company president could authorize the expenditure of funds, given that Moe Studio's only communication was through Roper, who edited, revised, and reviewed all work done and made specific requests with regard to the project, it was reasonable for Moe Studio to conclude that she was the authority on this project. Whether an agent is acting within the scope of his actual or apparent authority is a question of fact for the fact-finder to determine. *Henry v. Gaines-Derden Enters. Inc.,* 314 Ark. 542, 863 S.W.2d 828 (1993). As the fact-finder, it was within the trial judge's province to believe or disbelieve the testimony of any witness. *Schueck, supra.*

We cannot agree that the judge's decision that Roper had authority to do those things necessary, proper, usual, and reasonable to achieve the finished project was clearly erroneous, or that it was clearly beyond the preponderance of the evidence to determine that Roper possessed such authority as a reasonably prudent person, using diligence and discretion, in view of the principal's conduct, would naturally suppose the agent to possess. *General Motors, supra.* Because we cannot agree with Foundation's contention that the special judge's finding as to the apparent authority of their employee was clearly erroneous, we affirm the decision below.

In the final point on appeal, Foundation takes issue with the trial court's finding that a valid contract was created between the parties, notwithstanding the scope of Roper's authority. Foundation argues that Moe Studio was asked to prepare a proposal for the project, along with other bidders, and that they were not selected for the job because the quality of their "spec" work was unacceptable. Moe Studio denied that they were ever told that other bidders were being considered and argued that the level of detail and effort expended on the project, together with the extensive cooperation with the client and the direction of the company president to "get to work," clearly suggested to them that an oral contract was in place for them to do the job. While Foundation cited the price lists submitted to them bore captions suggesting that they were only quotes on the proposed cost of completing the project, Moesta testified that this was simply a form that he used for convenience. While the price of the job remained nearly consistent in each price list, Moesta acknowledged price changes based upon Foundations's requests for revisions, but testified that Foundation had agreed in July to pay what it would cost to prepare the brochures. An early estimate of cost on August 12 was $5430, not including printing charges, compared with the final bill of $4715.

The essential elements of a contract are (1) competent parties, (2) subject matter, (3) legal consideration, (4) mutual agreement, and (5) mutual obligations. *Gentry v. Hanover Ins. Co.,* 284 F. Supp. 626 (D.C. Ark. 1968)(*cited in Hunt v. McIlroy Bank & Trust,* 2 Ark. App. 87, 616 S.W.2d 759 (1981). *See also Southern Surety Co. v. Phillips,* 181 Ark. 14, 24 S.W.2d 870 (1930)). We keep in mind two legal principles when deciding whether a valid contract was entered into: (1) A court cannot make a contract for the parties but can only construe and enforce the contract which they

have made; and if there is no meeting of the minds, there is no contract; and (2) It is well settled that in order to make a contract there must be a meeting of the minds as to all terms. *Hunt, supra (citing Hanna v. Johnson*, 233 Ark. 409, 34 S.W.2d 846 (1961); *Irvin v. Brown Paper Mills Co.*, 52 F. Supp. 43 (D.C. Ark. 1943), *rev'd. on other grounds*, 146 F.2d 232 (8th Cir. 1944)).

We have previously held that an uncertain agreement may be supplemented by subsequent acts, agreements, or declarations of the parties as to make it certain and valid. *Swafford Ice Cream v. Sealtest Foods*, 252 Ark. 1182, 483 S.W.2d 202 (1972). The acts of practical construction placed upon a contract by the parties are binding and maybe resorted to relieve it from doubt and uncertainty. The objection of indefiniteness may be obviated by performance and acceptance of performance. *Id.* Such is the case here. Based upon the level of cooperation with Foundation and the extensive revisions that agreed to between Roper and Moesta, it was reasonable for Moe Studios to conclude that Foundation had engaged them to prepare a sales brochure and that they would be paid for their work. We cannot agree with Foundation's assertion that the trial court's finding that a contract "evolved over a period of time to a meeting of the minds, ... created by offer and acceptance" was clearly erroneous. Therefore, we affirm the trial court on this point as well.

Affirmed.